NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                            )
Jeffrey M. TERRY,                           )
                                            )
                    Plaintiff,              )
                                            )        Hon. Katharine S. Hayden
          v.                                )
                                            )        Civil Action No. 06-1788 (KSH)
TOWN OF MORRISTOWN, and                     )
KARL PETER DEMNITZ,                         )        **OPINION**
                                            )
                    Defendants.             )
_____     )

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment [D.E. 48] filed

by Defendants the Town of Morristown and Chief of Police Karl Peter Demnitz ("Defendants").

For the following reasons, Defendants' motion is granted.

## I.  BACKGROUND

Plaintiff Jeffrey Terry was a Public Safety Telecommunicator with the Morristown Police

Department when he applied for the position of Police Officer.  He was placed on the eligibility

list on November 10, 2004.  On December 17, 2004, Plaintiff received a conditional offer of

employment subject to successful completion of both a physical and psychological evaluation.[1]

The Institute of Forensic Psychology's Dr. Matthew Guller, who holds a psychology permit in

_____

[1] Under N.J.A.C. § 4A:4-6.1(a)(3), an applicant for the position of police officer may be
denied appointment if he or she is "physically or psychologically unfit to perform effectively the
duties of the title."

1

the State of New Jersey, conducted the psychological evaluation on December 27, 2004, under

the supervision of licensed psychologist Dr. Leslie J. Williams.  Dr. Guller noted in his report

that during the time that Plaintiff worked in Morristown as a bouncer, "[i]t was reported by

officers responding to calls at these bars that [Plaintiff] impressed as overly aggressive as a

bouncer based on indications that he used force when it may not have been necessary."  (Bratti

Cert., Ex. A ("IFP Report") at 15.)  Additionally, Dr. Guller noted that Plaintiff had been fired

from two previous jobs as a bouncer, and that Plaintiff took "essentially no blame in either

firing."  (*Id.*)  Dr. Guller further noted that when Plaintiff worked as a dispatcher with the

Morristown Police Department, he was given a written reprimand for one incident, and his

probationary period was extended for six months based on another incident when he disobeyed

direct instructions.  (*Id.*)  Dr. Guller concluded that

> [o]verall, [Plaintiff] lacked credibility in terms of his discussion of
> many of the issues in his background.  In addition, his history
> indicates a pattern of impulsivity and/or poor judgment, which can be
> dangerous, or a significant problem in a police role.  His test findings
> raised some concerns about his functioning within a team
> environment.  This concern seems to be confirmed somewhat by his
> background, and there is some concern about this man's ability to be
> a team player.  This can be a major impediment in a police role.
> Finally, there is some indication from his history and the background
> information provided by the department that this man may be overly
> aggressive, and potentially apt to use unnecessary force.  For these
> reasons, he is not being recommended for appointment.

(*Id.* at 18.)  Based on the psychological evaluation, Defendant Demnitz, the Chief of Police, did

not extend an offer of employment to Plaintiff.

Plaintiff elected to undergo a second psychological evaluation through a self-chosen

psychologist, Dr. Bart Rossi, who concluded that

2

> [Plaintiff] presented himself quite well during the interview session. He has never been arrested, has never had a restraining order placed against him, and indicates he has no problems with drugs or alcohol. At this time he has a clear driving record. He has worked effectively in his current position as a dispatcher for over two years. His psychological testing results indicate[] that he is bright (high above average), and has a personality profile on the MMPI-II (most widely recognized personality measurement in the world) that is within Normal Limits. There is no indication of any significant psychological problems or issues. He worked for a local rescue squad when he had the opportunity, and he appears genuinely "community minded." For all of these reasons [Plaintiff] appears to be a good candidate for a position as Police Officer. He is recommended for the position and should be a fine addition to any local Police Department.

(Cresci Cert., Ex. N ("Rossi Report") at 4.)   Dr. Rossi did not address Dr. Guller's concerns about Plaintiff's potential aggressiveness.

Plaintiff appealed Defendants' decision not to hire him to the State of New Jersey, Department of Personnel, Merit System Board, which referred the matter to the Medical Review Panel. On October 21, 2005, the Medical Review Panel conducted a hearing and decided to obtain a third psychological examination by Robert Kanen, Ph.D. On January 7, 2006, Plaintiff met with Dr. Kanen for a clinical interview. Dr. Kanen found that Plaintiff had "a history of work performance problems [and] . . . . difficulty accepting responsibility for his mistakes." (Cresci Cert., Ex. O ("Kanen Report") at 11.) "[W]hen faced with an intense, emotionally charged situation, [Plaintiff] may have difficulty effectively modulating his emotions and the resulting response may be grossly inappropriate for what the situation warrants."(*Id.*)  Dr. Kanen concluded that

> [t]his examiner concurs with the findings of the Institute for Forensic Psychology that [Plaintiff] lacks credibility regarding many issues in his background. This evaluator takes very seriously the concerns expressed by members of the Morristown Police Department

> regarding [Plaintiff's] capacity to follow orders, statement about tuning people up, statements about speaking skills being rough in the past, and past work performance problems.
> . . . .
> The findings of this evaluation raise concerns that Mr. Terry would have difficulty effectively interacting with the community during emotionally charged, stressful and complex situations. [Plaintiff] is considered psychologically unsuitable to perform the duties of a police officer and is not recommended.

(*Id.* at 11-12.)

Plaintiff filed exceptions with the Merit System Board, arguing that Dr. Rossi's report should be adopted because Dr. Kanen's report only mimicked that of Dr. Guller.  The Merit System Board ultimately concluded that Plaintiff should be removed from the eligibility list because "the appointing authority [Town of Morristown] has met its burden of proof that Jeffrey M. Terry is psychologically unfit to perform effectively the duties of a Police Officer." (Bratti Cert., Ex. F ("MSB Report") at 5.)  Plaintiff appealed, and the New Jersey Superior Court, Appellate Division affirmed, holding that "[t]he [Merit System] Board's conclusion that Terry lacked psychological fitness to so serve is not arbitrary, capricious or unreasonable and is based upon substantial credible evidence in the record."  *In re Terry*, 2007 N.J. Super. Unpub. LEXIS 1609, at *4 (Aug. 22, 2007).

On April 19, 2006, Plaintiff sued in federal court.  On August 31, 2006, Plaintiff filed a Second Amended Complaint that added Karl Peter Demnitz as a Defendant.  Plaintiff asserts claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5, *et. seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et. seq.*  Plaintiff also asserts claims against Defendants under the Privacy Act of 1974, 5 U.S.C. § 522a, and Health

4

Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6 ("HIPAA"), as well as common law claims for defamation and invasion of privacy.   Defendants have filed the instant motion for summary judgment on all claims.

## II.  DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e).

A.  <u>Discrimination Claims</u>

Defendants contend that Plaintiff cannot establish a prima facie case of disability discrimination under either the ADA, NJLAD, or Rehabilitation Act.

To show a violation of any of these statutes, a plaintiff must first establish a prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also*

5

*McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the [Americans with] Disabilities Act, the substantive standards for determining liability are the same."); *Baxter v. AT & T Communications*, 712 F. Supp. 1166, 1172 n.2 (D.N.J. 1989) ("The methodology of proof in unlawful discrimination cases, as set forth in *McDonnell Douglas Corp. v. Green*, has been adopted by the New Jersey Supreme Court and applied to claims brought under the NJLAD.").  To establish a prima facie case a plaintiff must establish that:  (1) he belongs to a protected class; (2) he was qualified for the position sought; (3) he was not hired despite his qualifications; and (4) the employer continued to seek applicants with plaintiff's qualifications.  *McDonnell Douglas*, 411 U.S. at 802.

A plaintiff satisfies the first prong, that he belongs to a protected class because of a "disability,"  by establishing  (1) that he has "a physical or mental impairment which substantially limits one or more major life activities"; or (2) that he has "a record of such an impairment"; or (3) that he is "regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  Plaintiff admits that he is not disabled, but contends that Defendants regarded him as having a mental impairment.  (Second Am. Compl. ¶ 13.)

To be considered  "disabled" under the "regarded as" prong, a plaintiff must establish that:  "(1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities."  *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).  "In both cases, it is necessary that a covered entity entertain

6

misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton*, 527 U.S. at 489.  For an impairment to be substantially limiting in the major life activity of working, the plaintiff must be perceived as unable to perform a broad class of jobs, and not simply unable to perform one particular class of jobs.  *See Murphy v. United Parcel Service*, 527 U.S. 516, 523 (1999).  "If a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability."  *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006).

In this case, it is undisputed that Plaintiff was offered a police officer position that was conditioned on his successful completion of a psychological examination.  Dr. Kanen determined that Plaintiff was not psychologically fit for duty as a police officer.  (Kanen Report at 11.)  Plaintiff was removed from the list of eligible candidates not because Defendants had misperceptions about Plaintiff's psychological ability, but because he was found psychologically unqualified for the job.  (MSB Report at 5.)   The recommendation not to hire Plaintiff was made by Dr. Kanen and Dr. Guller based on Plaintiff's work history, demonstrated aggressiveness, and difficulty interacting with the community.  (IFP Report at 18, Kanen Report at 11-12.)  Additionally, the finding was limited to Plaintiff's inability to perform the specific job of police officer in Morristown, and not a broad class of jobs.

Plaintiff has failed to identify what specific type of disability Defendants allegedly thought he had.  The record demonstrates that Plaintiff failed his psychological examinations due to his "history of impulsivity and/or poor judgment," concerns about his "functioning within a

team environment," and because his conduct in the past showed he was "overly aggressive, and potentially apt to use unnecessary force." (IFP Report at 18.) Moreover, he was found to "lack[] credibility regarding many issues in his background," and there were concerns about his "capacity to follow orders" and that he "would have difficulty effectively interacting with the community during emotionally charged, stressful and complex situations." (Kanen Report at 12.) This evidence does not, as Plaintiff appears to suggest, support even the inference that Defendants perceived him as suffering from a psychological disability that substantially limits major life activities. To the contrary, there is a more than satisfactory link between the disqualifying factors the psychologists found and the job Plaintiff was seeking. As a result, he has failed to adduce evidence sufficient for a fact finder to find that Defendants regarded him as disabled under the first prong of the prima facie test.

Even assuming Plaintiff had established a prima facie case, his discrimination claims would nonetheless be subject to dismissal under the burden shifting test where, once the plaintiff has established a prima facie case, the employer is tasked with articulating "some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Once the employer articulates a legitimate reason for the unfavorable employment decision, a plaintiff may "defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was

either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (citations omitted).  Thus, to defeat a motion for summary judgment, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citations omitted).

In meeting their burden, Defendants assert that the decision not to hire Plaintiff was based on his failed psychological evaluation, which indicated that Plaintiff had problems with poor judgment, working in a team environment, aggressiveness, following orders, and interacting with the community.  Under N.J.A.C. § 4A:4-6.1(a)(3), Defendants may deny eligibility or appointment when a person is found "physically or psychologically unfit to perform effectively the duties of the title." [2]  The Merit System Board concluded that Plaintiff should be removed from the eligibility list because Defendants had met their burden of proof in establishing that Plaintiff was psychologically unfit, and the Appellate Division upheld the Board's determination. This Court easily concludes that Defendants have satisfied their burden of demonstrating a legitimate, nondiscriminatory reason for not selecting Plaintiff.  To survive this summary judgment motion, Plaintiff must establish pretext on behalf of Defendants.

However, Plaintiff has not specified what alleged perceived disability he had or how the failed psychological evaluations were pretext for the alleged discrimination.  He argues in his

---

[2] N.J.A.C. § 4A:4-6.1 applies to civil service hiring in New Jersey and "grants government agencies . . .  broad discretion in their hiring practices and procedures."  *Griswold v. Port Auth. of N.Y. & N.J.*,  2009 U.S. Dist. LEXIS 84129, at *16 (D.N.J. Sept. 14, 2009).

9

brief what the Defendants' real reasons were

> a). The major reason was: [Plaintiff] worked as a bouncer in his
> previous employment.
> b). The minor reason was: [Plaintiff] often rolls up his shirt
> sleeves to reveal his biceps.

(Pl.'s Br. at 9.) This does not begin to touch the Defendants' justifications.

Plaintiff states that he previously passed psychological testing for a position as a police officer in 2002, which constitutes evidence that Defendants' justifications are implausible and contradictory. As to this contention, although Plaintiff may have passed a psychological evaluation in 2002, he was not offered a position as a police officer at that time because "even though he passed his psychological, [the Chief of Police] had a couple of issues with it," and "thought that if he became a dispatcher, he would grow within the police department and it would help him hopefully become a police officer." (Cresci Cert., Ex. V at 19:11-23.) Again, this background fact does not establish a genuine dispute as to the plausibility of Defendants' justification that they did not offer Plaintiff a position as a police officer based on the psychological testing in subsequent years and specific instances of conduct during his employment as a dispatcher.

Plaintiff also argues that Defendants' reasons are pretextual because other police officers had been arrested in assault-related issues prior to joining the police force, and that certain police officers had failed psychological evaluations but were hired anyway. These allegations, however, are not supported by record evidence.[3] Because Plaintiff has not adduced proofs such that a

---

[3] In his brief at pages 9 and 10, Plaintiff cites to the record to support his pretext argument. The record does not bear out Plaintiff's contentions. For example, he argues that even though Officers Rispoli and Captain Kruse were arrested in "assault related issues" prior to joining the force, they were not disqualified by their acts of physical assault. Those officers'

reasonable facfinder could find that defendants' articulated reasons were "unworthy of credence," *see Fuentes*, 32 F.3d at 765,  the Court will grant summary judgment in favor of Defendants on Plaintiff's ADA, NJLAD, and Rehabilitation Act discrimination claims.

B.  Privacy Act & HIPAA Claims Against the Town of Morristown

Defendants also move for summary judgment on Plaintiff's Privacy Act and HIPAA claims, which is granted.  Plaintiff has conceded that neither state agencies nor local governing bodies are subject to the Privacy Act, as has been held in decisions in district courts in this Circuit and other circuit courts.  *See  Banda v. Camden County Bd. of Chosen Freeholders*, 2009 U.S. Dist. LEXIS 45158, at *4 (D.N.J. May 29, 2009); *see also Schmitt v. City of Detroit*, 395 F.3d 327, 329 (6th Cir. 2005); *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999); *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989); *Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir. 1983); *Wren v. Harris*, 675 F.2d 1144, 1148 n.8 (10th Cir. 1982).

C.  NJLAD & Common Law Claims

As to the two remaining state law claims, the Court declines to exercise

---

arrests, however, were not "assault related."  Rispoli was arrested when he was 25 for interfering with an arrest when he attempted to help a friend who was pulled over for a DUI, but that charge was dropped to a local ordinance violation involving annoyance of a police officer.  (Pl.'s Ex. S, 33:19- 34:12.)  Captain Kruse was stopped for a motor vehicle summons when he was 18 and taken in due to a windshield wiper violation.  (Pl.'s Ex. R, 24:20-25:11.)

Plaintiff also alleges that Officers Demnitz, Summers, Lonergan, and Elia failed psychological screens.  His allegations are based on the deposition of Captain Kruse, where Kruse testified that he was aware that other officers had failed a psychological exam at some point; however, when asked about Officers Demnitz, Summers, Lonergan, and Elia, he was directed not to answer those questions.  (Pl.'s Ex. R, 42:14-45:12.)  Despite this, Plaintiff affirmatively asserts in his brief that Demnitz, Summers, Lonergan, and Elia all failed psychological exams.

supplemental jurisdiction insofar as it has dismissed all federal claims.  28 U.S.C. § 1367(c).

## III.  CONCLUSION

For the foregoing reasons, this Court will grant Defendants' motion for summary judgment.   An appropriate form of order will be entered.

Dated: September 29,  2010
Newark, New Jersey

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.